**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CHARLES ANDREW TOLER, | ) | |
| on behalf of himself and all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No: |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| AT&T MOBILITY SERVICES LLC and | ) | |
| DOE DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Charles Andrew Toler brings this action on behalf of himself and all others similarly situated and, upon personal knowledge as to facts known to Plaintiff and upon information and belief following investigation of counsel, alleges as follows against AT&T Mobility Services LLC ("AT&T" or "Defendant") and Doe Defendants 1-20:

### INTRODUCTION

1.     This action seeks relief for Plaintiff, and past and present AT&T employees nationwide, whom Defendants failed to pay overtime.

### PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff is a citizen of the State of North Carolina.

3.     Defendant is a limited liability corporation with principal offices in Atlanta, Georgia.

4.     Plaintiffs are currently unable to name defendants sued herein under the fictitious names, Does 1 through 20, inclusive ("Doe Defendants").  Plaintiffs will seek leave to amend their complaint to allege the true names and capacities of those Defendants, if appropriate, upon ascertaining their true names and capacities via discovery, including discovery relating to one or more additional AT&T entities who, upon information and belief, may be legally responsible for the alleged misconduct.

5.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is a citizen of and regularly does business in this judicial District and resides here, and/or a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

7.     Defendants own, operate, or control retail stores, kiosks, and in-store locations (collectively hereinafter, "AT&T Retail Stores" or "Retail Stores"), and/or the employee payrolls for these Retail Stores.  The Retail Stores  provide customer

support, services, and sales of wireless telecommunication and mobile phone services and products under the AT&T brand name.

### Defendant's Retail Store Employees

8.     Defendant caused up to thousands of similarly situated Retail Store workers to be employed and/or paid, including workers Defendants classify as retail consultants, sales associates, and other similar job positions who are not exempt from Defendant's obligation to pay them as required under the Fair Labor Standards Act (collectively herein, "Retail Store Employees").[1]

9.     The Retail Store Employees' job duties are, *inter alia*, to provide customer service and support, market and sell mobile phone services and products, to provide consultation, product expertise, and demonstrations to their customers at Retail Stores, and to have command of the technology behind AT&T mobile devices and other products.

10.     Defendant has employed Plaintiff and other Retail Store Employees on an hourly, plus commission, bonus, and/or incentive basis, to perform such duties and to operate Retail Stores nationwide.

11.     Defendant employed Plaintiff as a Retail Store Employee within the

---

[1] Excluded from the definition of Retail Store Employees are Retail Store managers and assistant managers.

three years preceding the filing of this Complaint.  Plaintiff worked as a Retail Store Employee (that is, as a retail sales consultant) at AT&T Retail Stores in North Carolina from approximately 2014 to 2019.

12.     At relevant times, Plaintiff and similarly situated Retail Store Employees routinely worked in excess of 40 hours per week and Defendant failed to timely and properly pay them for overtime as set forth below.

## Defendant's In Home Experts

13.     Defendant also employs workers as "In Home Experts," and/or controls the employee payrolls for such workers (herein, the "In Home Expert Employees").

14.     In Home Expert Employees accompany installers of AT&T branded services, such as U-verse or Direct TV, to customers' homes, and provide customer service, support, and product education to the customer.

15.     Defendant caused thousands of similarly situated In Home Expert Employees to be employed and/or paid.

16.     Defendant has employed Plaintiff and other In Home Expert Employees on a salary basis, to perform such duties nationwide.

17.     Defendant employed Plaintiff as an In Home Expert Employee within the three years preceding the filing of this Complaint.  Plaintiff worked as an In Home Expert for AT&T in North Carolina in 2019.

18.     Defendant's In Home Expert Employees include workers who are not exempt from Defendant's obligation to pay them as required under the Fair Labor Standards Act.

19.     Defendants use common payroll and communications systems, and Defendants' centralized policies and practices dictate the calculation and payment of wages, including overtime, to employees nationwide including Retail Store Employees and In Home Expert Employees.

20.     At relevant times, Plaintiff and similarly situated In Home Expert Employees routinely worked in excess of 40 hours per week and Defendant failed to timely and properly pay them for overtime as set forth below.

**Defendant Failed to Pay Retail Store Employees for Communications**

21.     Defendant had a policy or practice of requiring Plaintiff and other Retail Store Employees to participate in essential and indispensable communications outside of scheduled work hours at relevant times – including in workweeks where they worked more than 40 hours – without paying them wages or overtime for it.

22.     During such workweeks, for example, Plaintiff routinely worked for no pay and for no overtime, outside of scheduled work hours, by participating in employee mobile phone messaging and other communications, ranging from before shift hours began in the morning, to long after shift hours ended at night, including

on days Plaintiff was not scheduled to work.

23.     Defendant provided Plaintiff and other Retail Store Employees a company mobile phone for use outside of scheduled work shifts.

24.     Defendant required Plaintiff and other Retail Store Employees to use applications installed on their company mobile phones and to engage in work communications outside of work hours.

25.     At relevant times, for example, Defendant required Plaintiff and other Retail Store Employees to use a prescribed group communications chat application on their company-issued mobile phones ("group chat") to partake in work communications outside of work hours.

26.     Defendant regularly sent communications to Plaintiff and its other Retail Store Employees using group chat, and required them to read the communications, partake in group chats, and review, for example, new company directives or AT&T product information, outside of scheduled work hours.

27.     Defendant also sent Plaintiff and other Retail Store Employees emails, to read outside of work hours, and which Defendant expected Plaintiff and other Retail Store Employees to read outside of work hours.

28.     Defendant has assigned Plaintiff and other Retail Store Employees with email addresses and a mobile telephone number in order to communicate with

customers at relevant times, including outside of scheduled work shifts.

29.     Defendant has had a practice of providing Plaintiff and other Retail Store Employees with business cards containing their company email address and telephone number for their company-issued mobile phone, and per Defendant's practice, business cards were given to customers who visited AT&T Retail Stores or who purchased, or might purchase, AT&T wireless telecommunication products or services.

30.     Defendant further instructed Plaintiff and other Retail Store Employees to tell those customers to contact them if they had any problems or questions regarding their purchases.

31.     Plaintiff and other Retail Store Employees regularly fielded phone calls and emails from customers outside of work hours when they were off-the-clock.

32.     Defendant expected, and otherwise had a policy or practice of requiring Retail Store Employees, including Plaintiff, to field customer calls and emails outside of work hours.

33.      Defendant regularly required Plaintiff to perform such uncompensated tasks during his tenure with AT&T as a Retail Store Employee.

34.     Likewise, in workweeks where Plaintiff already worked forty (40) or more hours, Plaintiff routinely performed the above-described work, as required by

Defendant – outside of scheduled work hours, and without receiving commensurate pay or overtime.

35.    Defendant was aware, or knows or reasonably should have known, that Plaintiff performed off-the-clock work.  Plaintiff regularly communicated with his manager about such work off-the-clock, including, for example, via text messaging immediately after a customer call.

36.    As a result, Defendant has required Plaintiff and Retail Store Employees to regularly participate in communications, off-the-clock, without paying them wages or overtime, and without maintaining proper payroll records detailing such work time as compensable.

### Defendant Failed to Pay Overtime for Retail Store Work
### Before and After Clocking In and Out

37.    As an intrinsic and indispensable part of their jobs at AT&T, and as a matter of routine, Defendant regularly required Plaintiff and other Retail Store Employees to spend time performing work at Retail Stores, without compensation, before clocking in and after clocking out for their shifts.

38.     The work performed before clocking in and after clocking out was an essential part of the job that Plaintiff and other Retail Store Employees were employed to perform.

39.    As an intrinsic and indispensable part of their jobs at AT&T, and as a

matter of routine, Defendant regularly required Plaintiff and other Retail Store Employees to jump through unpaid hoops in order to clock in on scheduled work days – for example, Plaintiff and other Retail Store Employees were required to access secured areas (such as locked doors and locked filing cabinets), enter passwords, log in to software, and/or navigate computer screens, in order to be able to clock into work and carry out customer service or sales duties, and at relevant times, Plaintiff and other Retail Store Employees had to begin working and provide in-Store customer service before clocking in.  Defendant made available no other way to avoid or reduce having such work time uncompensated.

40.    As an intrinsic and indispensable part of their jobs at AT&T, and as a matter of routine, Defendant regularly required Plaintiff and other Retail Store Employees to participate in uncompensated Retail Store opening or closing duties. For example, when participating in opening duties, they reported to the Retail Store at set times as required, but at relevant times had to wait, without being paid, for the Retail Store to be keyed open in order to initiate the process for clocking in. When participating in closing duties, after clocking out, at relevant times Plaintiff and other Retail Store Employees would have complete closing duties, such as turning off lights, and/or securing the store (by closing roll cages, or otherwise); and at relevant times at Retail Store closing, Plaintiff and other Retail Store Employees were

required to clock out but thereafter still had to wait for the employee in charge to complete closing duties, in order to leave.

41.    The above-described uncompensated work tasks at the Retail Store took up to five minutes or more of time per task or task component.

42.    Plaintiff and other Retail Store Employees received no pay, including overtime pay at one and one-half times their regular rate of pay, for such work time.

43.    Plaintiff and other Retail Store Employees regularly incurred this additional unpaid time worked in weeks in which they had already worked forty (40) or more hours.

44.    Defendant has required Plaintiff and Retail Store Employees to regularly participate in such work without paying them wages or overtime, and without maintaining payroll records of such work time.

45.    Defendant could have easily tracked or accounted for such time worked prior and subsequent to the clocking in and out, and was aware, or knows or reasonably should have known, that Plaintiff performed such off-the-clock work.

46.    As a result, Defendant has required Plaintiff and Retail Store Employees to regularly participate in work prior and subsequent to their clocking in and out, without paying them wages or overtime, and without maintaining proper payroll records detailing such work time as compensable.

**Defendant Failed to Pay Overtime at
One and One-Half Times the Regular Rate**

47.     In addition to requiring Plaintiff and other Retail Store Employees to work off-the-clock without wages and overtime as set forth above, Defendant failed to pay on-the-clock work in excess of forty (40) hours in a work week at one and one-half times the regular rate of pay.

48.     At relevant times, Plaintiff and other Retail Store Employees worked at Retail Stores in excess of 40 hours per week, but Defendant failed to pay overtime hours at a rate of one and one-half times the regular rate of pay as required by applicable law.

49.     Instead, at relevant times, Defendant paid overtime hours at a rate of only one time the regular rate of pay.

50.     For example, during the pay period of December 2, 2018 to December 15, 2018, Plaintiff worked, and his paystubs from Defendant reflect, 2.32 hours of worked overtime.  Plaintiff only received one time his regular rate of pay, rather than one and one-half times his regular rate of pay for this overtime.

51.     During the pay period of December 16, 2018 to December 29, 2018, Plaintiff worked, and his paystubs from Defendant reflect, 8.37 hours of worked overtime.  Plaintiff only received one time his regular rate of pay, rather than one and one-half times his regular rate of pay for this overtime.

- 11 -

52.     During the pay period of December 30, 2018 to January 12, 2019, Plaintiff worked, and his paystubs from Defendant reflect, 9.73 hours of worked overtime.  Plaintiff only received one time his regular rate of pay, rather than one and one-half times his regular rate of pay for this overtime.

53.     During the pay period of February 10, 2019 to February 23, 2019, Plaintiff worked, and his paystubs from Defendant reflect, 1.3 hours of worked overtime.  Plaintiff only received one time his regular rate of pay, rather than one and one-half times his regular rate of pay for this overtime.

## Defendant Failed to Pay Non-Exempt In Home Expert Employees Overtime

54.      At relevant times, Defendant employed Plaintiff as an In Home Expert.

55.     Plaintiff and other In Home Expert Employees have regularly worked more than forty (40) hours in a workweek, but Defendant has not remitted them overtime pay.

56.     Defendant has had a policy or practice of paying Plaintiff and other In Home Expert Employees on a salary basis with no overtime.

57.     Defendant's In Home Expert Employees are not exempt from Defendant's obligation to pay them as required under the Fair Labor Standards Act, including the obligation to pay them overtime at one and one-half times the regular rate of pay for hours worked in excess of forty (40) hours per week.

58.    In Home Expert Employees' primary job duty is customer service.

59.    In Home Expert Employees are dispatched to the home of an AT&T customer who is having AT&T service installed, such as U-verse or DirectTV television service, in order to arrive at the customer's home along with the installer.

60.    In Home Expert, such as Plaintiff at relevant times, address questions the customer has about the service being installed.

61.    In Home Expert Employees, such as Plaintiff at relevant times, educate customers about the features of the service being installed, including demonstrating how to use it, access service features, pay bills, and get account support.

62.    In Home Expert Employees, including Plaintiff at relevant times, also work to problem-solve any issues with the installation.  For example, if an installer is having problems activating the service once service is wired or installed, the In Home Expert will call the AT&T office in order to resolve the activation issue.

63.    In Home Expert Employees have an ancillary sales function (*e.g.*, they will try to upsell the customer to buy additional AT&T products or services, such as mobile phone services), which represents only a minority of the time spent on the customer or inside the customer's home, and which is performed only after the primary customer service functions associated with the pre-existing installation.

64.    After leaving the home that had an AT&T service installed, In Home

Expert Employees, including Plaintiff at relevant times, continue to provide customer service and problem solving for the installed AT&T service (such as U-verse or DirectTV), for which the In Home Expert had no involvement in the sale.

65.    Defendant gave Plaintiff and other In Home Expert Employees business cards to give to customers while at their homes; and Defendant requires In Home Expert Employees to give their business cards to the customer and to inform the customer to contact the In Home Expert for help if there are any issues with the service installed that day.

66.    As part of their job obligations, In Home Expert Employees, including Plaintiff at relevant times, then continue to field inquires and complaints, and provide customer service for the AT&T product installed when the In Home Expert had visited the home.

67.    It is Defendant's policy and procedure to have In Home Expert Employees perform such customer service work regardless of whether or not the In Home Expert makes an ancillary upsell of another AT&T product.

68.    For example, when a customer had a service such as U-verse television or internet service installed, another AT&T crew may arrive at the home later to bury the cables in the customer's yard.  If the other crew fails to timely arrive, the customer would call the In Home Expert, such as Plaintiff, and the In Home Expert

would be required to address and resolve the situation.

69.    Similarly, if the installed service had poor signal quality, the customer would call the In Home Expert and the In Home Expert, such as Plaintiff, would arrange to have a technician dispatched.

70.    Such work tasks have required Plaintiff and other In Home Expert Employees to work more than forty (40) hours per workweek.

71.    Plaintiff and other In Home Expert Employees are non-exempt employees under the FLSA and, as result, Defendant is required to pay them overtime pay at one and one-half times their regular rate of pay for time worked.

72.    Defendant has misclassified Plaintiff and other In Home Expert Employees as salaried employees, and has failed to pay them overtime pay despite Plaintiff and other In Home Expert Employees regularly working in excess of forty (40) hours per week.

## COLLECTIVE ACTION ALLEGATIONS

73.    As more fully set forth below, Plaintiff brings this Complaint individually, and as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of the following Collectives:

**Retail Store Employee Collective:**

All Retail Store Employees who worked in an AT&T Retail Store

location in the United States (i.e., a store, kiosk, or in-store location) for more than 40 hours in a workweek at any time during the preceding three years.

**In Home Expert Collective:**

All AT&T In Home Expert Employees in the United States who worked more than 40 hours in a workweek at any time during the preceding three years.

Excluded from the Collective(s)[2] are current and former executives and officers of Defendant, Defendant's counsel, Plaintiff's counsel, and any member of the judiciary presiding over this action.

74.     An FLSA collective action will benefit Plaintiff and the many other employees who were similarly subject to Defendant's practice of failing to actually and correctly pay overtime wages.   The number and identities of such similarly situated employees are available from Defendant's records.

75.     Pursuant to 29 U.S.C. § 216(b), the facts set forth here satisfy the lenient requirements for maintenance of a collective action, and notice should be sent to the members of the Collectives.

76.     Plaintiff consents to join this collective action.  *See* Exhibit A.

---

[2] Unless otherwise noted, "Collective" as used in this Complaint refers to each alleged Collective. Plaintiff reserves the right to modify the Collective definitions as appropriate.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Individually and on Behalf of the Retail Store Employee Collective)**

77.    Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein, and brings this Count against Defendants individually on behalf of the Retail Store Employee Collective.

78.    Defendants, by their conduct set forth above, knowingly and willfully violated the FLSA, 29 U.S.C. § 201 *et seq.*

79.    At relevant times, Plaintiff and other Retail Store Employee Collective members were "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1), and Defendants were "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

80.    Pursuant to the FLSA, Defendants are required to pay Plaintiff and members of the Retail Store Employee Collective overtime for hours worked in excess of 40 in a workweek.

81.    Defendants' above-described decisions, practices, and policies prevented Plaintiff and other Retail Store Employee Collective members from receiving proper overtime compensation for all time they worked in excess of 40 hours per workweek at relevant times.

82.    In such workweeks, as part of their business practice, Defendants failed

to timely or properly pay overtime to Plaintiff and the Retail Store Employee Collective for off-the-clock work Defendants required, including communications, travel, in-Store work, out-of-Store work, and work before and after clocking in and out, as set forth above, within three years preceding the filing of this Complaint.

83.     Furthermore, Defendants failed to timely or properly pay overtime to Plaintiff and the Retail Store Employee Collective for on-the-clock overtime work, because Defendants paid overtime at one time the regular rate rather than one and one-half times the regular rate at relevant times, as set forth above, within three years preceding the filing of this Complaint.

84.     Defendants failed to keep accurate records of time worked, compensation owed, and wages and overtime earned and due.

85.     The above-described conduct violates the FLSA and was part of Defendants' business practice at relevant times.

86.     Defendants' failure to timely pay off-the-clock overtime for Retail Store Employees, and to pay time and one-half overtime wages for Retail Store Employees, is willful and intentional.

87.     At relevant times Defendants did not make a good faith effort to comply with their duties to compensate Plaintiff and other Retail Store Employee Collective members as required by the FLSA.

88.     Defendants were aware of their duty to pay for said preshift and postshift work routinely performed by their Retail Store Employees, including as set forth herein.

89.     Defendants were aware and on notice of their duty to pay overtime at one and one-half times the regular rate of pay for overtime work performed by their Retail Store Employees.

90.     As a result of Defendants' conduct, Plaintiff and the Retail Store Employee Collective were denied proper and timely overtime wages, as set forth above, and are entitled to damages, including back pay and lost wages, and liquidated damages as permitted by the FLSA in amounts to be proven at trial.

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(Individually and on Behalf of the In Home Expert Collective)**

91.     Plaintiff repeats and realleges the preceding paragraphs as if fully alleged herein, and brings this Count against Defendants individually on behalf of the In Home Expert Collective.

92.     Defendants, by their conduct set forth above, knowingly and willfully violated the FLSA, 29 U.S.C. § 201 *et seq*.

93.     At relevant times, Plaintiff and other In Home Expert Collective members were "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1),

and Defendants were "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

94.    Pursuant to the FLSA, Defendants are required to pay Plaintiff and members of the In Home Expert Collective overtime for hours worked in excess of 40 in a workweek.

95.    Defendants' above-described decisions, practices, and policies prevented Plaintiff and other In Home Expert Collective members from receiving proper overtime compensation for all time they worked in excess of 40 hours per workweek at relevant times, including within three years before the filing of this Complaint.

96.    Defendants failed to timely or properly pay overtime to Plaintiff and the In Home Expert Collective for overtime work, and instead improperly misclassified them as exempt employees and without remitting them overtime as set forth above, within three years preceding the filing of this Complaint.

97.    Defendants failed to keep accurate records of time worked, compensation owed, and wages and overtime earned and due.

98.    The above-described conduct violates the FLSA and was part of Defendants' business practice at relevant times.

99.    Defendants' failure to pay overtime wages to In Home Expert

Employees is willful and intentional.

100.   At relevant times Defendants did not make a good faith effort to comply with their duties to compensate Plaintiff and other Collective members as required by the FLSA.

101.   Defendants were aware and on notice of their duty to pay overtime to In Home Expert Employees.

102.   As a result of Defendants' conduct, Plaintiff and the In Home Expert Collective were denied proper and timely overtime wages, as set forth above, and are entitled to damages, including back pay and lost wages, and liquidated damages as permitted by the FLSA in amounts to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully prays that the Court grant the following relief:

    a. Find that this case may be properly maintained as a FLSA collective action;

    b. Issue notice of this FLSA collective action advising members of the Collectives that this civil action has been filed, of the nature of the action, and of their right to join this case;

    c. Find that Defendants violated and willfully violated the FLSA, and enter judgment accordingly;

    d. Award all damages and back-pay available under applicable law, including unpaid or untimely paid overtime wages, and an additional

and equal amount as liquidated damages;

e.  Award pre-judgment and post-judgment interest as permitted by applicable law;

f.  Award reasonable attorneys' fees and costs to Plaintiff's counsel as allowed by applicable law and/or statute; and

g.  Award such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all triable matters.

Respectfully submitted this 28TH day of July, 2020.

s/ Kevin A. Maxim
Georgia Bar No. 478580
One of the Attorneys for Plaintiff
Charles Andrew Toler on behalf of himself
and all others similarly situated

THE MAXIM LAW FIRM, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia    30309
Phone: (404) 924-4272
Fax:    (404) 924-4273
E-mail: kmaxim@maximlawfirm.com

Ilan Chorowsky, Esq.
(Application for *pro hac vice* admission forthcoming)

Mark A. Bulgarelli, Esq.
(Application for *pro hac vice* admission
forthcoming)

PROGRESSIVE LAW GROUP LLC
1570 Oak Avenue
Suite 103
Evanston, IL 60201
Phone:  (312) 787-2717
E-mail:  ilan@progressivelaw.com
E-mail:  markb@progressivelaw.com

Attorneys for Plaintiff Charles Andrew Toler
on behalf of himself and all others similarly
situated

## CERTIFICATION

Pursuant to N.D. Ga. L.R. 7.1(D), counsel for Plaintiff hereby certifies that

this document has been prepared with Times New Roman (14 point) font, which font

has been approved under LR 5.1(C).

s/ Kevin A. Maxim
Georgia Bar No. 478580
One of the Attorneys for Plaintiff
Charles Andrew Toler on behalf of himself
and all others similarly situated

THE MAXIM LAW FIRM, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia 30309
Phone: (404) 924-4272

Fax:    (404) 924-4273
E-mail: kmaxim@maximlawfirm.com